**FILED**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

AUG 2 5 2016  DC

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| JOSEPH JEROME MIEDZIANOWSKI, | ) Civil No. 06-cv-05629-TMD |
| | Crim. No. 98-cr-932-1-TMD |
| Movant, | ) |
| | **Supplemental Motion Pursuant** |
| | ) **To Federal Rule Of Civil** |
| v. | **Procedure 60(b) Seeking Relief** |
| | ) **From The Court's Memorandum** |
| | **Opinion And Order (Civil Doc.** |
| UNITED STATES OF AMERICA, | ) **No. 14) Denying The Movant** |
| | **Relief Under 28 U.S.C. § 2255** |
| Respondent. | ) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Comes now the Movant, Jospeh Jerome Miedzianowski, pro se, and submits his Supplemental Motion Pursuant To Federal Rule Of Civil Procedure 60(b) Seeking Relief From The Court's Memorandum Opinion And Order (Civil Doc. No. 14) Denying The Movant Relief Under 28 U.S.C. § 2255.

## Statement Of Relevant Facts

Represented by Martin A. Blumenthal, the Movant filed with this Court his 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence. See Civil Doc. No. 1.

The § 2255 motion filed with the Court alleged, inter alia, that the Movant was entitled to relief because the Movant's Sixth Amendment right to counsel was violated when, among other things, Thomas M. Breen, the Movant's Trail-Court

counsel, (1) failed to call to testify 65 of the 66 witnesses listed as material defense witnesses; (2) wrote a note that indicated his motive for not calling such witnesses; and (3) failed to perform effectively, through acts and/or omissions, as a result of the note written by Thomas M. Breen indicating his motive for not presenting a complete defense on behalf of the Movant. See Civil Doc. No. 1, id. Pages 3-4, Parts 6(a)-6(g).

Mr. Blumenthal, the Movant's § 2255 attorney, attached a copy of the "note" in question and manifesting a conflict of interest in this case (the Sixth Amendment violation complained of in this case)(§ 2255 Exhibit A), a copy of the Defense Witness List enumerating the witnesses Breen failed to call as a result of his conflict of interest (Exhibit B), a copy of the Movant's handwritten list of tapes to be played to the jury (Exhibit C), and copies of the Movant's letters to his counsel concerning (1) what witnesses and tapes he wanted presented, (2) what that evidence would reveal, and (3) how that evidence would bear upon the guilt or innocence determination to made at trial. See Civil Doc. No. 1, id. Exhibits A-E.[1] **Those exhibits are being reproduced herein as Exhibits 1-5 for the convenience of the Court.**

---

[1]
    The Movant hereby certifies under the penalty of perjury, 28 U.S.C. § 1746, that Exhibit Nos. 1-5 are true and accurate copies of the records on file with the Court in Civil Doc. No. 1, and certifies, further, that the records are true and accurate representations of the truths that they propose.

Mr. Blumenthal's § 2255 motion did NOT, however, (1) attach a detailed and specific affidavit showing proof of the allegations going beyond the assertion of a conflict of interest, or (2) provide an erudite explanation of what the evidence and testimony excluded by Breen would have entailed or proven but for the alleged conflict of interest.  Id.

Blumenthal next filed a reply brief (a "traverse") that once again centrally featured the note (Exhibt A/Exhibit No. 1) written by Breen, and defended the need for a more detailed and specific factual basis for the claims made in the § 2255 motion.  See Civil Doc. No. 11.

On 17 January 2007, the Court denied the Movant's 28 U.S.C. § 2255 motion in a Memorandum Opinion And Order.  See Civil Doc. No. 14.  Therein the Court's decision reads like a lengthy indictment charging the Movant's 28 U.S.C. § 2255 counsel, Martin A. Blumenthal, with "ineffective assistance" **–faulting counsel for his failure to present more evidence showing that the note in question was not indicative of some "strategic decision" to call the witnesses complained of.**  See Civil Doc. No. 14, id. Page 6, ¶2.  Indeed, there are numerous instances in the Court's Memorandum Opinion And Order where the Court indicates its dispositive ruling is directly attributable to § 2255 counsel's failure to sufficiently plead the Movant's cause.  Id. (Exhibit No. 6).

The Court then promptly executed its Judgment on a separate document pursuant to Federal Rule of Civil Procedure 58.  See Civil Doc. No. 15.

Following the Court/s entry of Judgment, Counsel for the
Movant moved the Court for a Certificate of Appealability
("COA") pursuant to 28 U.S.C. § 2253(c)(1)(B).  Civil Doc. No.
18.  Therein, § 2255 Counsel requested a COA by arguing, inter
alia, that Counsel had made a substantial showing of the denial
of a constitutional right based upon the alleged "actual" conflict
interest that "adversely affected his lawyer's performance."  See
Civil Doc. No. 18 (Citing, inter alia, Cuyler v. Sullivan, 446
U.S. 335 (1980)).

This Court then denied the request for a COA because (1)
§ 2255 Counsel had not cited anywhere within his pleadings that
he relied upon Cuyler, supra, and (2) § 2255 Counsel had,
therefore, "forfeited" his reliance upon Cuyler.  See Civil
Doc. No. 20, id. Page 2 (Exhibit No. 7).[2]

In light of the deficiencies in the pleadings of counsel,
the Seventh Circuit found that the Movant, through his § 2255
Counsel, had NOT made a substantial showing of the denial of
a constitutional right and denied him a COA.  See Civil Doc.
No. 25.

---

[2]
  Once again, the Court faults the "effectiveness" of § 2255
Counsel for failing to plead sufficiently the law or the facts
of the case and renders a ruling adverse to the Movant's cause
based thereupon.  Compare Civil Doc. No. 14 (repeatedly faulting
Counsel for deficiencies in his pleadings to the Court and
rendering a decision adverse to the Movant based thereupon).  In
that regard, Counsel, for his part, informed the Court that all
that was required of him in the underlying § 2255 proceeding was
for him to cite "facts" (not case law) supporting the Movant's
§ 2255 claims.  See Civil Doc. No. 11.

On 31 July 2014, the Movant, proceeding pro se, filed with this Court his motion seeking relief from the Court's Memorandum Opinion And Order and Judgment denying him 28 U.S.C. § 2255 pursuant to Federal Rule Of Civil Procedure 60(b). See Civil Doc. No. 26.[3]

On 25 August 2015, the Seventh Circuit rendered its binding decision in Ramirez v. United States, 799 F.3d 845 (7th Cir. 2015), and therein (1) significantly expanded a habeas petitioner's right to obtain relief from an order or judgment denying him 28 U.S.C. § 2255 relief under Federal Rule of Civil Procedure 60(b); (2) recognized that the such relief may be obtained via Rule 60(b) on grounds that § 2255 counsel was ineffective in that "initial-review collateral proceeding:" and (3) such ineffectiveness may be shown to have affected the "integrity" of the underlying § 2255 proceedings (and therefore warrant relief from order or judgment adverse to the habeas petitioner's cause) when (a) the underlying habeas claim has "some merit" and (b) but for the ineffectiveness of **§ 2255 counsel** in failing to perform an essential duty, the outcome of the proceeding likely would have been different. Id.

---

[3] That motion has been the subject of extensive briefing in this Court and remains pending. The instant motion is likewise brought under Federal Rule of Civil Procedure 60(b) and attacks the same Memorandum Opinion And Order and Judgment denying him § 2255 relief and, therefore, supplements that motion currently pending before the Court.

In light of the foregoing statement of relevant facts, therefore, the Movant now supplements his pending Rule 60(b) motion to seek relief from the Memorandum Opinion And Order and Judgment denying him § 2255 relief on the grounds that his § 2255 Counsel was ineffective in accordance with Ramirez, supra.

## Law And Argument

In accordance with Ramirez, supra, and the Supreme Court's holding in Gonzalez v. Crosby, 545 U.S. 524 (2005).

In Ramirez, supra, the Seventh Circuit held:

> "[Ramirez] argued that postconviction counsel was ineffective for causing him to miss the appeal deadline (among other reasons). The district judge denied the motion, on the belief that there is a rigid rule under which there is no right to counsel on collateral review. See Coleman v. Thompson, 501 U.S. 722, 752, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). This would have been correct before the Supreme Court's decisions in Trevino v. Thaler, 133 S.Ct. 1911, 185 L.Ed.2d 1044 (2013), and Martinez v. Ryan, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). In those two decisions, however, the Court significantly changed its approach to claims of ineffective assistance of counsel at intitial-review colalteral proceedings. We conclude that the argument Ramirez raises is congnizable under Rule 60(b), see Gonzalez v. Crosby, 545 U.S. 524, 125 S.Ct. 2641, 162 L.Ed.2d 480 (2005), and thus a remand is required so that the district court may consider the merits of his contentions."

Id. 799 F.3d at 847; See also Ramirez, 799 F.3d at 856 ("We conclude that Ramirez's situation fits the framework [that was] articulated in Maples, Trevino and Martinez. The district court was apparently unaware of those decisions and thus categorically denied Ramirez's motion under Rule 60(b) without discussing how Ramirez's post conviction counsel's performance affected the

integrity of the [underlying 28 U.S.C. § 2255] proceedings").

In the case at bar, therefore, the Movant principally notes that his underlying § 2255 claims were denied by the Court in a Memorandum Opinion And Order that excoriated the performance of § 2255 Counsel and noted that the Court was ruling dipositively against the Movant based upon Counsel's subpar performance.  See Memorandum Opinion And Order, Civil Doc. No. 14 (Exhibit No. 6).

Moreover, this Court denied the Movant a COA in this case and therein, first, stated that it was "mystified" by § 2255 Counsel's contentions, and then denied the Movant a COA because § 2255 Counsel had NOT clearly advocated the Movant's position to the Court and, therefore, had "forfeited" the Movant's reliance upon Cuyler, supra.  See Minute Order Denying COA, Civil Doc. No. 20 (Exhibit No. 7).

In each instance, the Court's dispositive ruling was NOT based upon a "full and fair" determination of his claims solely on their merits, but were, instead, denied based upon the performance of § 2255 Counsel and his failure to plead effectively on the Movant's behalf.  See, for example, the Court's Memorandum Opinion And Order, Civil Doc. No. 14 (Exhibit No. 6), which reads not like an isolated merits determination of the § 2255 claims, but instead reads like an eleven page indictment charging the Movant's § 2255 Counsel with ineffective assistance based upon his acts and ommissions during the underlying § 2255 proceedings.

Likewise, the Court's Memorandum Opinion And Order denies the Movant an "evidentiary hearing" by again faulting § 2255

Counsel for failing to submit a "detailed and specific" affidavit in support of his § 2255 claims —a rudimentary demand that had been recognized by the Seventh Circuit as a condito sine qua non to making an ineffective assistance of counsel claim for at least a decade prior to § 2255 Counsel's critical omission. See Memorandum Opininon And Order, Civil Doc. No. 14 (Exhibit No. 6), id. Page 10 (Citing Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996)).

As these adverse, dispositive rulings against the Movant demonstrate, the underlying 28 U.S.C. § 2255 proceedings were fundamentally undermined by § 2255 Counsel's ineffectiveness.

Thus, because § 2255 Counsel's ineffectiveness deprived the Movant of a full and fair decision solely on the merits of his claims, § 2255 Counsel's ineffectiveness affected the fairness and integrity of the underlying 28 U.S.C. § 2255 proceedings such that the Movant is entitled to relief under Federal Rule of Civil Procedure 60(b) and the holdings in Ramirez and Gonzalez, supra.

To that end, the Movant advances the following claims that § 2255 Counsel was ineffective.

Claim One:    § 2255 Counsel Was Ineffective For Failing To (1) Clearly Allege That The Movant Was Claiming That His Trial Counsel Was Burdened By An "Actual" Conflict Of Interest, And (2) That The Conflict Of Interest Claim Was Proceeding Under The Rubric Of The Supreme Court's Holding In Cuyler v. Sullivan, 446 U.S. 335 (1980)

Generally, to establish "ineffective assistance" on

collateral review a habeas petitioner must establish (1) that his attorney's assistance fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's ineffective assistance, the result of the proceedings have been different. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

In contrast, under Cuyler v. Sullivan, 446 U.S. 335 (1980), "to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's perfomrance." Id. at 348.

An "adverse effect" is **something less** than the "actual prejudice" requirement of Strickland; it requires only a showing that there is "a reasonable likelihood that counsel would have performed differently if not for the [alleged] conflict of interest." See Cuyler, 446 U.S. at 346-47; See also Hall v. United States, 371 F.3d 969, 974 (7th Cir. 2004); Stoia v. United States, 22 F.3d 766, 771 (7th Cir. 1994).

Thus, where a habeas petitioner can show an "actual" conflict of interest, the claim prevails under the less demanding standard announced in Cuyler if he can show an "adverse effect" -as contradistinguished from the more demanding standard of "actual prejudice" articulated in Strickland.

In the case at bar, Counsel's intitial § 2255 pleadings to the Court did NOT assert the claim was being advanced under the rubric of Cuyler or otherwise state the magic words "actual conflict of interest." See Civil Doc. Nos. 1 and 11.

Counsel's pleading, however, did in fact preserve the "actual conflict of interest claim" when Counsel propounded Trial Court Counsel's note indicating that Counsel was abandoning the Movant's defense mid-trial due to a lack of sufficient funds. See Civil Doc. No. 1, id. Page 3 (ExhibitA, provided herewith as Exhibit No. 1). Counsel's pleading then claimed that the Movant's Sixth Amendment rights were violated because he failed to perform specific and enumerated duties (those listed as 6(a) through (f) of the § 2255 motion) as a result of "the note he showed the defendant." See Civil Doc. No. 1, id. Page 4, Part 6(g).[4]

Moreover, § 2255 Counsel appeared to have been surprised by the Court's application of the Strickland standard as opposed the more favorable Cuyler standard −an indication that § 2255 Counsel harbored a sincere belief that he had clearly advanced his Sixth Amendment claim as one falling under the rubric of an "actual conflict of interest." See Civil Doc. No. 18, id. Pages 4-5 (noting that the Court's Memorandum Opinion And Order "does not correctly state the section 2255 Petitioner's legal burden")(Citing Cuyler v. Sullivan, 446 U.S. 335 (1980).

---

[4] The Court is reminded that, under Federal Rule of Civil Procedure 8(e), Counsel's § 2255 pleadings, as a general matter, "must be construed so as to do justice." Thus, the Movant submits, the failures of § 2255 Counsel should not, as a general matter, be elevated over the substance of his claims or over the liberty interests that 28 U.S.C. § 2255 serves.

In any event, the Court's ruling on the denial of a COA reveals that it was due to § 2255 Counsel's failures that the Movant was foreclosed from obtaining substantive relief or a COA in this case because, in its opinion, § 2255 Counsel had NOT timely asserted his reliance upon Cuyler. See Civil Doc. No. 20, id. Page 2 (asserting that § 2255 Counsel "forfeited" his relaince upon Cuyler)(Exhibit No. 7).

Thus, the integrity of the underlying 28 U.S.C. § 2255 proceedings are called into question by § 2255 Counsel's ineffective assistance in (1) failing to **more clearly** assert the Movant's claim was raised under the rubric of an "actual conflict of interest," and (2) that the claim was, therefore, governed by the **less onerous standard** articulated in Cuyler, supra, as opposed to that set forth in Strickland.

Such is especially true where, as noted infra, (1) the underlying conflict of interest claim possessed considerable merit, and (2) but for § 2255 Counsel's errors and omissions, the result of the underlying § 2255 claim would have been reviewed under more favorable terms and/or otherwise would have resulted in a vacatur of conviction on all Counts where the record demonstrated Trial Counsel's performance was "adversely affected" consistent with the demands of Cuyler.


Claim Two:    § 2255 Counsel Was Ineffective For Failing To Secure
              And Present A Specific And Detailed Affidavit From
              The Movant Where (1) The Movant Proffered Such To
              Counsel, (2) The Proffered Affidavit Would Have
              Provided Critical Context To The Note Manifesting An
              Actual Conflict Of Interest Based Upon Trial Court
              Counsel's Pecuniary Interests, (3) The Affidavit

Would Have Revealed That Trial Court Counsel's
Failure To Present His Planned Defense Was Not
Due To Trial Strategy But Was, Instead, Due To
His Being Adversely Affected By His Pecuniary
Interests, And (4) The Presentation Of The
Proffered Affidavit Would Have Entitled The
Movant To An Evidentiary Hearing And Fulfilled
The Seventh Circuit's Binding Precedents Requiring
Such Claims To Be Accompanied By A Specific And
Detailed Affidavit

The Movant in this case proffered to his § 2255 Counsel a
specific and detailed affidavit recounting the facts and
circumstnaces surrounding the note submitted as Exhibit A to
his 28 U.S.C. § 2255 motion, which is included as Exhibit No.
1 to the instant pleading.  See Affidavit Of Joseph Jerome
Miedzianowski In Support Of His Supplemental Motion To Alter,
Amend Or Vacate The Court's Order Denying Relief Pursuant To
28 U.S.C. § 2255, id. Pages 5-6 (Exhibit No. 8); See also
Exhibit No. 9, Proffered Affidavit To Martin Blumenthal.

As the Movant's Affidavits demonstrate, (1) the Movant's
underlying § 2255 claim possessed considerable merit as, (2)
such reveals that Trial Court Counsel elevated his pecuniary
interests over the Movant's right to present a complete
defense, (3) but for Trial Court Counsel's pecuniary interests
he would have presented the defense he had coordinated and
planned with the Movant and was thus "adversely affected" by
the alleged conflict of interest the "note" (Exhibit A/1)
manifested, (4) the decision of Trial Court Counsel was NOT,
therefore, a "strategic" decision because it was based upon
pecuniary interests, and (5) the affidavit, detailing Trial
Court Counsel's demand for an additional $100,000 quid pro quo

to present the promised and planned defense, would have earned the Movant the right to an evidentiary hearing and would have otherwise fulfilled § 2255 Counsel's **obligation** to present a specific and detailed affidavit supporting his claims that his conviction and sentence were constitutionally flawed because Trial Court Counsel was burdened by an "actual conflict of interest."

§ 2255 Counsel did <u>NOT</u>, however, present the proffered affidavit.

As a consequence, § 2255 Counsel's omission on that score: (1) allowed the claim to be reviewed as an ineffective assistance of counsel claim under <u>Strickland</u> and its more burdensome standard of review because, (2) absent the Movant's proffered affidavit, the context of the "note" manifesting an alleged conflict of interest did not, per se, establish that the note was evidence probative of an "actual conflict of interest" governed by <u>Cuyler</u>, (3) absent the requisite context that would have been provided by the affidavit proffered by the Movant to his § 2255 Counsel, the Court was able to conclude that Trial Court Counsel's decision not to present the Movant's defense was due to "strategic decision" as opposed to Pecuniary interests, (4) which, then, deprived the Movant review of his claims under <u>Cuyler</u>'s less burdensome standard, and (5) deprived the Movant of a COA and evidentiary hearing where, inter alia, § 2255 Counsel's failure to present the affidavit violated the Seventh Circuit's longstanding precedent set forth <u>Prewitt v. United States</u>, 83 F.3d 812, 819 (7th Cir. 1996).

13

In conclusion, the Movant has demonstrated that his § 2255 Counsel's ineffective assistance has affected the fairness and integrity of the underlying 28 U.S.C. § 2255 proceedings, and he should be, thus, enititled to relief under the holdings in Ramirez and Gonzalez, supra.

To be sure, the § 2255 Counsel's failure to clearly articulate his claims to the Court is ineffective where the basis for rejecting his claim is NOT the facts and law of the case, but § 2255 Counsel's failure to timely and clearly advance his claim under the rubric of an actual conflict of interest governed by Cuyler and its more favorable standard of review. See Civil Doc. No. 18, id. Page 2 (Exhibit No. 7).

The underlying claim was NOT made contemporaneously with the evidence necessary to secure a review on the merits and, therefore, such constitutes ineffective assistance of counsel corrigible via Rule 60(b). See Ramirez, 799 F.3d at 850 (noting that Ramirez was entitled to reopen his preexisting § 2255 proceeding to overcome a procedural barrier to its adjudication, that is, the presentation of evidence that was omitted by previous § 2255 counsel and was critical to its disposition).

The underlying claim, but for § 2255 counsel's errors and omissions, possessed considerable merit as (1) a lawyer's interest in pecuniary gain can constitute an "actual conflict of interest," see Daniels v. United States, 54 F.3d 290, 294-95 (7th Cir. 1995), and (2) the note and the affidavit of the Movant, taken together, demonstrate that Trial Court Counsel abandoned the Movant's defense based upon pecuniary interests.

14

That is, but for § 2255 Counsel's errors and omissions, the Movant would have prevailed on his claim, after full and fair hearing, that his Trial Court Counsel was burdened by an actual conflict of interest from which his performance was adversely affected.

Accordingly, the Court should alter, amend or vacate its Memorandum Opinion And Order and Judgment denying the Movant relief under 28 U.S.C. § 2255 in light of the holdings in Ramirez and Gonzalez, supra.

## Conclusion

Wherefore, the Movant respectfully requests his motion be granted on this 23 day of August , 2016.

Joseph Jerome Niedzianowski
Reg. No. 11502-424
Federal Correctional Institution
Post Office Box 5000
Pekin, Illinois 61555-5000

Movant/Pro Se

# Certificate Of Service

The Movant, Joseph Jerome Miedzianowski, pro se, hereby certifies under the penalty of perjury, 28 U.S.C. § 1746, that he has served the foregoing motion upon opposing counsel of record, Brian Patrick Netols, AUSA, at 219 South Dearborn Street, Chicago, Illinois, 60604, by placing such in a first-class, postage prepaid envelope and depositing such in the U.S. Mail on this _23_ day of August, 2016, to effect delivery and service in accordance with the Rules of this Court.

Joseph Jerome Miedzianowski
Reg. No. 11502-424
Federal Correctional Institution
Post Office Box 5000
Pekin, Illinois 61555-5000

Movant / Pro Se

Dear Joe,

your defense
truck needs new tires.
The Gas ~~Tank~~ Tank is
empty. I'm
going to pull it
over to the side
of the road and let it
rust.

Margala

*Exhibit-A-1*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                              )
         Plaintiff,           )
                              )    No. 98 CR. 923
    vs.                       )    Before the Honorable Blanche M. Manning
                              )
JOSEPH JEROME MIEDZIANOWSKI,  )
                              )
         Defendant.           )

## DEFENDANT MIEDZIANOWSKI'S LIST OF POTENTIAL WITNESSES

NOW COMES Defendant Joseph Jerome Miedzianowski, by and through his counsel,

Thomas M. Breen and Steven C. Rueckert, and respectfully gives notice that he may call the

following witnesses at the trial in this cause:

1.      The following persons are current or former members of law enforcement

agencies including the Chicago Police Department, the Drug Enforcement Administration, the

Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, and Firearms, and the Cook

County Sheriff's Office who may be called as defense witnesses:

Bocconcelli, Steven

Burn, Thomas

Byrne, Michael

Caluris, S.

Casey, Matthias

Cline, Philip J.



Darling, J.

Dart, Robert

DeLaFont, J.

Doody, James

Figioli, D.

Figueroa, George

Flavin, Gerald T.

Fleming, P.

Flores, Sergio

Gamboa, John

Garrido, John

Gawrys, S.

Gonzalez, Juan

Grapenthien, R.

Grau, H.

Green, Walter A.

Griffin, James

Guzman, J.

Hilbring, Donald

Jarding, William M.

Jolley, Laurie

Karczewski, Eugene S.

2

Korzeniewski, R.

Lash, Michael

Longos, J.

Maglaya, Judith

Marianos, Richard

Mauer, Richard

McCormick, Patrick

McDonald, Bryan

McKinney, Michael

Mengey, Ed

Mertes, P.

Morgan, Michelle Marie

Norise, R.

Obartuch, Richard

O'Donnel, Michael

Pergande, A.

Plovanich, Matt

Radney, Harvey

Ragusa, Elizabeth

Risley, Raymond

Risley, J.

Rodriguez, Joe

Rotunno, John

Rybicki, R.

Sampila, Daniel L.

Sebeck

Shields, Terry M.

Signoretti, D.

Smith, Walter

Sobczyk, D.

Stack, Edmund M.

Tavales, Celestino

Vukonich, Frank

Wiora, E.

Worsham, S.

Woytko, Greg

Zacharias, P.

Zopp, Bill

2.      Mr. Miedzianowski reserves the right to call any additional current and former law enforcement officers that are named in any of the discovery materials that the government has provided or will later provide to the defense.

3.      The defense may call Nancy Miedzianowski and Joseph Miedzianowski, Jr.

4.      Mr. Miedzianowski adopts the government's list of witnesses and hereby reserves the right to recall any of the government's witnesses during the defense's case-in-chief.

4

5.    Mr. Miedzianowski reserves the right to amend this list of witnesses, either in writing or by orally informing the prosecution, to add witnesses that the defense may call as a result of facts developed at trial or further investigation.

Respectfully submitted,

THOMAS M. BREEN and

STEVEN C. RUECKERT

By: _____

Thomas M. Breen
Thomas M. Breen & Associates
53 West Jackson, Suite 1460
Chicago, Illinois 60604
312-360-1001

Steven C. Rueckert
53 West Jackson, Suite 1410
Chicago, Illinois 60604
312-427-6464

# JOE's COPY

Tapes To Play

Juan Martin – 322, 1129, 1798, 2247, 2257, (3271-74 good), 3596-97, 4000

Joseph Deleon – (Beginning of Tape while Phone is Ringing Line #1 – 855) 774, 1526, 1897, 2339 2339, 2603, 5200, 5364.

Rico Passeley – 403, 2529, 853, 983, 1151, 1416, 3850, 4130, 5045, 5310.

Pablo ARRAYA – 327, 2212-14, 2237.

Sam Castro – 2711, 3689, 4744. (newspaper)

Nina Lis – 06, 2428-30-31, 2601, 3579, 3387, 4015.

Fred Rock – (1213, Eddie 1221), 1241, 419, 2068, 2470, 2723, 2950, 3253, 3376-78, 4576, 5014.

Yolanda Navarro – 299, 2312, 4415.

Frankie Figueroa – 3554, 3495, (Remember missing Tapes for Nov when Frankies sister Told in Rita)

Pancho Otero – 1872

EXHIBIT #60

→ C-3 EXHIBIT

Ed Mingy - 4395

Rich Maher - 1929, 3715, 3916, 3992, 4027
5000 - 5002

Ed Stack - 3917, 4321, 4549. Ammo - Talk on Phone

Nelson Padilla - 5054, 5219

David Ruiz - 4039. (He knows about no pay)

Jesus Cuevas - (1208, 2418, 2923, 3261), 2817,
3533.
                     Eddie

John Galligan - 1117, 1542, 14, 52, 405, 707, 1153
1207, 1222, 2723, 3287, 3429, 3839, 5220, 3661
(42/3-15-16)

No Diamor

Kay Johnson - 3894, (Chad's mom) About me & Fed -
Chad + informants

Aldinni, Lou (maybe) - 2307?

Bob Bieble - (maybe) - 2114.

Chad Johnson - 1541

08 Jan 01

Tom,

The reason why My Family's Been Calling you, is Because I need to see you. I don't want To discuss my Case on the phones here at The MCC. Tom, you really need to get ahold of Ed Mingy and Rich Maher. I can't Believe Mingy would have said what he did To you. He knows me, and he knows how I spin these informants. So him, Telling you That "I know Joe is innocent, But if I Testify it will mean my career." Just doesn't make sense. Tell him all I want him to do is to Testify as to what he says on the Tape To me. these government task files show how I Talk To those informants, and street scum. St. Gate knows it as well as alot of AUSA's and agents. Also Tell Rowdy not To call Ted Maher But to subpeon the office of The Superintendent. That B.S story about Maher Being away on a DEA Task Force is weak. They have to produce him. Maher Also can help to explain how I Talk To these people on the phone and how I Promise Them the world. Tom LOT Me know that you receive this letter and call my house To confirm it.

Thanks

Joe

P.S. Did you ever get ahold of Monico?

EXHIBIT
D-4

#10 a

29 Dec 00

Tom,

Please contact that asshole, Ralph Meczyk, and tell him to turn over the following evidence, which was part of my file. I'm afraid that Dickhead will either give it to the FBI, or Netols and they'll throw it away. As you saw by Meczyk's 302, he already gave them part of my defense strategy, and I'm sure that he would not hesitate to give them these items. Please get on this, because that Hebrew will not answer my calls.

- There are notes, tapes, and a statement taken by Jack Duggan, with Ralph and Larry Hyman present, from Rito Garcia. Ralph showed me the statement on a lawyer visit, and told me about the conversation. Rito was in Mexico and called Ralph. Ralph said it was a conference call. Rito told Ralph that he had not paid any money to anyone to fix his court case. And that Ralph won his case. Ralph showed me notes in his handwriting that he said were Rock solid for my defense

- A letter Ralph recieved from Art Matleng Re: me and how Art saw his chance to fuck me for fronting him out as a snitch with that ATF investigation


EXHIBIT
E-5

- AN AFFIDAVIT From Cristobal Lorado Taken By Duggan and Ralph, in which Cristobal denied giving money to anyone to fix his case, or of ever hearing about me. Ralph showed me the affidavit, But could not give me a copy Because it was at a visit.

- Notes, memos or tapes, which were made By Duggan and Meczyk, in regards To Samuel Castro "Puito". Puito came into Meczyk's office many times To tell Meczyk and Duggan how Juan Martin would call Castro and Tell Castro who to get ahold of, as well as himself, as to what story to Tell the Feds if they get arrested. I knew Meczyk gave Castro a recorder, Tapes, and questions To ask Martin, and Cindy to show how all this so called Conspiracy existed, But it was me that the Feds wanted, so to use me as a get of Jail Free, or soon, card. Martin knew the Feds hated my ass Because of ATF + Chad. Castro gave Meczyk a lot of good info for my defense. Please get it. (Also Javier Otero was at Ralph's office They have notes and statements from him)

*Find / Passed on the 1058 1705 To Castro*

*Exhibit - E-5*

- Also Duggan and Ralph met Fred Rock's girlfriend Maria. She Told them how Fred told her that they Are using me to get out even though I did Nothing wrong. (Lots of Notes) Thanks!

Tom Please get in This Because I know it will Figure heavy in my defense. I'm sure it will open your eyes when you see it.

Thanks again

Joe

P.S. - Tom I know it's a pain in the ass, but could you find out from Nedds where my Buck dibble Boy is. I'll customs all the info I need to prove my case. (Cyt files with Cydes) Remember the rest of Nelson's Photos are in his C/C file. Also go back and see where all my intelligence files, and Photos are. Remember, after they charge me through my evidence I didn't see any of it.

Thanks again <u>ex</u>

Exhibit-E-5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH MIEDZIANOWSKI, | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 06 C 5629 (98 CR 923-1) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Respondent. | ) | |

### MEMORANDUM AND ORDER

In his § 2255 motion, petitioner Joseph Miedzianowski claims that his trial lawyer was

constitutionally ineffective. For the following reasons, Miedzianowski is not entitled to relief

under § 2255.

### Background

The court assumes familiarity with the trial in this case, which lasted thirteen weeks and

is seared indelibly upon the court's mind despite the passage of the years. In a nutshell,

Miedzianowski – a former Chicago Gang Crimes Specialist – and twenty-two others were

charged with narcotics and RICO conspiracies as well as related charges of extortion, using and

carrying a firearm during and in relation to a crime of violence or a drug trafficking crime,

distributing cocaine and cocaine base, wire fraud, possessing stolen ammunition, and illegally

possessing a short-barreled rifle.

Miedzianowski and four other defendants eventually proceeded to trial. At the risk of

oversimplifying the very protracted proceedings, the government introduced extensive amounts

of evidence, including over 250 telephone conversations intercepted pursuant to a Title III

wiretap on two of Miedzianowski's home telephones, which portrayed Miedzianowski as an

active participant in extensive criminal activities. Miedzianowski's theory of defense was that

although it looked like he was participating in or spearheading criminal activity, he was in fact only pretending to do so in order to further his work as a Gang Crimes Specialist with the Chicago police department.

The jury didn't buy this and convicted Miedzianowski of all counts on which it deliberated: RICO conspiracy (Count I), conspiracy to possess with intent to distribute narcotics (Count II), conspiracy to commit extortion (Counts III and VII), extortion (Count IV), possession with intent to distribute cocaine (Count V), unlawful possession of a firearm (Counts VI and IX), and distribution of cocaine (Counts VIII and X). The court sentenced Miedzianowski to serve a term of life imprisonment on Counts I and II, as well as terms of imprisonment of five years each on Counts III, IV, VI, VII, VIII, IX, and X, to be served concurrently, and a term of imprisonment of five years on Count V to be served consecutive to the life sentence imposed on Count II.

Miedianowski appealed and the Seventh Circuit ordered a limited remand pursuant to *U.S. v. Paladino*, 401 F.3d 471 (7th Cir. 2005), so this court could revisit Miedzianowski's sentence to determine whether it would have sentenced him differently had it known that the Guidelines were advisory rather than mandatory. This court indicated that it would have imposed the same sentence even if it had known that the Guidelines were advisory, and the Seventh Circuit affirmed. *U.S. v. Miedianowski*, 2006 WL 452328, 168 Fed. Appx. 743 (7th Cir. Feb. 23, 2006) (unpublished order). The United States Supreme Court denied Miedianowski's petition for a writ of certiorari on June 26, 2006, and the § 2255 motion presently before the court followed.

-2-

## Standard of Review

Under § 2255, a prisoner may "move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds that the sentence was imposed in violation of the Constitution or laws of the United States or that "the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. In evaluating a § 2255 motion, the court must draw all reasonable inferences in favor of the government. *United States v. Galati*, 230 F.3d 254, 258 (7th Cir. 2000).

Section 2255 motions are not a substitute for direct appeal or a means of appealing the same issues multiple times. *Reed v. Farley*, 512 U.S. 339, 353-54 (1994). Thus, collateral relief under § 2255 is only available if an error is jurisdictional, of constitutional magnitude, or there has been a "complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004). In contrast, a habeas petitioner may not raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances, (2) nonconstitutional issues that could have been raised on direct appeal but were not, or (3) constitutional issues that were not raised on direct appeal unless he establishes cause for his procedural default as well as actual prejudice from the failure to appeal, or demonstrates that the court's refusal to hear the constitutional claim would result in a fundamental miscarriage of justice. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

## Ineffective Assistance

To render effective assistance of counsel under the Sixth Amendment to the United States Constitution, counsel's performance must satisfy the well-known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). Under the first prong of the *Strickland*

-3-

standard, Miedzianowski must show that his counsel's representation fell below an objective standard of reasonableness. *Id*. at 687-88. The second *Strickland* prong requires him to establish that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 694. If a defendant fails to satisfy one of the *Strickland* prongs, the court's inquiry under *Strickland* ends. *See id*. at 697; *see also Hough v. Anderson*, 272 F.3d 878, 890 (7th Cir. 2002).

Miedzianowski first contends that his trial counsel was constitutionally ineffective based on a note passed from counsel at trial (a copy of which is attached to his motion) reading: "Dear Joe, Your defense truck needs new tires. The gas tank is empty. I'm going to pull it over to the side of the road and let it rust. Abogado." According to Miedzianowski, this note proves that his trial counsel, in effect, abandoned him during trial.

At trial, Miedzianowski's lawyers advanced Miedzianowski's chosen theory (that the extensive collection of taped conversations seemingly showing Miedzianowski engaging in criminal activity in fact showed that he was engaging in police work) via cross-examination and by putting Miedzianowski on the stand (Miedzianowski's co-defendants Alina Lis and Mohammed Omar also testified at trial). Miedzianowski's lawyers also attempted to discredit the government's witnesses, many of whom were cooperating co-defendants, via vigorous cross-examination.

When viewed in the context of the trial, the court agrees with the government that the note was an expression of the fact that Miedzianowski's "if it looks like a duck and quacks like a duck, it isn't a duck" strategy was going over like the proverbial lead balloon despite counsels' best efforts. The court specifically recalls its own rejection of the theory and its conviction that

-4-

Miedzianowski's best defense was a good offense (*i.e.*, that he was best served by attacking the credibility of the government's witnesses, which his lawyers did very zealously).

Moreover, Miedzianowski cannot blame his lawyers for advancing the theory of his choice, which to this day he continues to promote, even though it ultimately proved unsuccessful. In addition, given that counsel was faced with huge numbers of Title III wiretap tapes memorializing in exhaustive detail Miedzianowski's participation in a complicated criminal enterprise, it is difficult to think of what his lawyers could have possibly done, other than tried their best to advance some sort of alternative explanation for the tapes. His lawyers did this and more; they did not step aside and allow their client to sink based on lack of effort. The fact that the only defense they could mount given the government's evidence did not work is not grounds for an ineffective assistance claim. In short, counsel is entitled to reevaluate trial strategy as the case progresses. Based on the facts and circumstances of this case, the note indicating that counsel did not share Miedzianowski's optimism regarding his defense theory does not show that Miedzianowski's lawyers abandoned their client and thereby provided representation which fell below an objective standard of reasonableness or was prejudicial.

The court next turns to Miedzianowski's second argument: that his lawyers were ineffective because although he submitted a list of 66 witnesses (attached as Exhibit B to his § 2255 motion), they called only one. According to Miedzianowski, the other witnesses would have explained Miedzianowski's role as an undercover officer/gang crimes specialist, what these officers do, and how they operate and gather evidence, as well as provided a convincing alternative explanation for the tape-recorded conversations in which Miedzianowski appeared to be engaging in criminal activity.

This claim fails because Miedzianowski merely points to a long list of witnesses without specifying the nature of the trial testimony they would have provided. *See, e.g., United States v. Anderson*, 61 F.3d 1290, 1298-99 (7th Cir. 1995) (rejecting ineffective assistance claim based on defense counsel's failure to call witnesses because the defendant did not show on the record what those witnesses would have said). The government suggests that Miedzianowski's note to one of his lawyers (attached to his § 2255 motion as Exhibit D) might be construed as a proffer of the testimony of several witnesses to the effect that these witnesses would have generally testified that the "feds" hated Miedzianowski and were trying to set him up, and that Miedzianowski was innocent.

However, Miedzianowski's note to his lawyer and the defense witness list, without more, is not enough to establish that counsel was ineffective. Without a more detailed showing by Miedzianowski, the court can only conclude that the decision not to call these witnesses was strategic. As noted by the government, calling witnesses whose testimony on behalf of the government was corroborated by numerous incriminating Title III recorded conversations with Miedzianowski was far from a risk-free proposition, and it is well-established that attorneys have "wide latitude . . . in making tactical decisions[,]" so to obtain collateral relief, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689. In any event, without specifics regarding the proposed testimony, Miedzianowski cannot establish that counsel's decision rose to the level of prejudice under *Strickland*. Thus, the court concludes that Miedzianowski's lawyers' decisions vis-a-vis calling witnesses fell within the wide realm of constitutionally reasonable assistance.

-6-

Third, Miedzianowski asserts that his counsel failed to recover his "street files" and that these documents were vital to his defense because they contained information gathered during his undercover operation that could prove his innocence. As with the list of potential defense witnesses, Miedzianowski does not provide any specifics regarding the "street files" so they cannot support an ineffective assistance claim. In addition, he does not explain why these materials establish that counsels' performance was deficient or how he was prejudiced by the decision not to pursue this potential line of defense. In any event, it is difficult to see, and Miedzianowski's current counsel does not explain, how the "street files" could have been a decisive piece of evidence in light of all the evidence presented at trial, including all of the Title III wiretaps featuring Miedzianowski himself. Because the court is not required to craft arguments for litigants or accept vague speculation, Miedzianowski's "street files" claim is thus unavailing.

Fourth, Miedzianowski argues that during the trial, his counsel neither reviewed nor played the government's tapes for the purpose of having Miedzianowski or other witnesses explain the tapes and their content to the jury from Miedzianowski's perspective. The court begins by noting that it obviously has no way of knowing the thought processes of Miedzianowski's lawyers. Yet, it is willing to go out on a limb and state with confidence that Miedzianowski's counsel was able to cross-examine the government's witnesses in connection with the tapes and also put Miedzianowski on the stand. Thus, counsel was able to, and did, explain the tapes and their content to the jury from Miedzianowski's perspective. The idea of somehow repeating the content of the tapes via a witness or replaying the Title III tapes additional times thus would serve no useful purpose other than to ingrain the tapes into the jury's mind even more. Given the nature of the tapes, this unquestionably could have only hurt

-7-

Miedzianowski. In short, this argument fails because it ignores the fact that counsel is entitled to make strategic decisions at trial. It also ignores the inevitable negative effect of doing as Miedzianowski now suggests.

Fifth, Miedzianowski contends that his lawyers should have called "several prosecution witnesses who admitted to defendant, [sic] that they were forced to lie on the stand and did, in fact, lie." Motion at 4. Who are these witnesses? What would they have said? How would their putative testimony meshed with the other testimony presented at trial? Without the answers to these questions, Miedzianowski's fifth ineffective assistance claim must fail.

Sixth, Miedzianowski contends that his lawyers left his work product and defense exhibits 57, 58, and 59 unattended in the courtroom, and says that he observed these materials on the government's file cart the next day "in a condition which suggested that the materials were inspected by the government." Motion at 4. Miedzianowski does not specify what work product is at issue. With respect to defense exhibits, if defense counsel wished to seek to introduce these exhibits, they would have to have shown them to the government, so doing this cannot be deficient performance. Miedzianowski also does not explain how showing the government potential defense exhibits could have been prejudicial.

Seventh, Miedzianowski claims that his lawyers ignored his instructions. This argument is an even more generalized version of Miedzianowski's other generalized arguments regarding what his lawyers should have done at trial, and is rejected for the same reasons.

Eighth, Miedzianowski asserts that his trial counsel improperly failed to call unspecified Internal Revenue Service agents who investigated Miedzianowski to testify that they believed he did not engage in tax evasion. According to Miedzianowski, this testimony would have belied other testimony indicating that he profited from illegal activity. Miedzianowski also claims that

his lawyer should have filed a motion under *Brady* concerning the tax investigation, explaining that the failure of the IRS to find hidden funds was exculpatory since it showed that he did not have any secreted funds.

The court recalls evidence at trial regarding Miedzianowski's financial condition and defense counsels' argument that his finances did not support an inference that he had received sizable amounts of money in connection with his criminal activities. The government also correctly notes that none of the charged offenses required the government to prove that Miedzianowski received proceeds from the conspiracy. Finally, in light of all of the evidence presented at trial – including evidence suggesting that Miedzianowski was living a modest lifestyle – the unspecified tax agent evidence would not have affected the outcome.

Ninth, Miedzianowski points to a letter written by co-defendant Nelson Padilla to co-defendant Mohammed Omar prior to trial asking Omar to support Padilla's statements to the FBI to facilitate Padilla's "deal" with the government. According to Miedzianowski, this letter could have been used to impeach Padilla, who was a potential government witness. The government states that the letter was in Omar's possession and thus it was under the impression that it was available to all defendants before the government learned of its existence. It also correctly notes that Padilla did not testify, so there was nothing to impeach and the failure to obtain impeachment materials could not have been constitutionally deficient performance or resulted in prejudice.

Tenth, Miedzianowski alleges that his lawyers' conduct violated Rule 8.4(a)(4) & (5) of the Illinois Supreme Court Rules, which provide that "[a] lawyer shall not . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation" or "engage in conduct that is prejudicial to the administration of justice." This argument is a non-starter as Miedzianowski

does not identify any federal constitutional right at issue, *Harris v. United States*, 366 F.3d at 594, and merely alleging that a lawyer violated the professional rules of conduct relief is not enough to establish that the lawyer was constitutionally ineffective, *U.S. ex rel. Sheppard v. Roth*, 762 F.Supp. 190, 195 (N.D. Ill. 1991).

## Evidentiary Hearing

Miedzianowski requests an evidentiary hearing on his § 2255 motion. A defendant does not automatically receive an evidentiary hearing upon request. *See, e.g., Cooper v. United States*, 378 F.3d 638, 641-42 (7th Cir. 2004) (the district court has discretion to deny a request for an evidentiary hearing "where the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief"); ; *Ebbole v. U.S.*, 8 F.3d 530, 534 (7th Cir. 1993) (denial of a request for an evidentiary hearing is proper when the court has acquired sufficient information from its observations, the record and the governing law to resolve the movant's § 2255 motion). Moreover, "in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Prewitt v. U.S.*, 83 F.3d 812, 819 (7th Cir. 1996) (internal citations omitted). Thus, conclusory allegations of prejudice are not enough to receive a hearing. *Id.* Miedzianowski's § 2255 motion clearly does not include a detailed and specific affidavit. Moreover, for the reasons discussed above, his motion and the record as a whole conclusively show that Miedzianowski is not entitled to any relief. Thus, his request for an evidentiary hearing is denied.

### **Conclusion**

For the foregoing reasons, Miedzianowski's request for relief under 28 U.S.C. § 2255

[#1] is denied. The clerk is directed to enter a Rule 58 judgment and to terminate this case from

the court's docket.

DATE:   January 17, 2007

Blanche M. Manning
Blanche M. Manning
U.S. District Judge

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 06 C 5629 (98 CR 923-1) | **DATE** | February 20, 2007 |
| **CASE TITLE** | *Miedzianowski v. United States* | | |

**DOCKET ENTRY TEXT:**

Miedzianowski's motion for a certificate of appealability [#18] is denied. The clerk is directed to forward a copy of this order to the Seventh Circuit.

■ [ For further details see text below.]                                                           Docketing to mail notices.

---

### STATEMENT

        Familiarity with the court's order denying Joseph Miedzianowski's motion for relief under 28 U.S.C. § 2255 is presumed for purposes of this order addressing Miedzianowski's motion for a certificate of appealability. Under 28 U.S.C. § 2253(c)(2): "(1) [ a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2) [t]he certificate must identify each substantial constitutional question; (3) [i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4) [a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5) [i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

        Moreover, when the court rejects a petitioner's constitutional claims on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessments of the constitutional claims debatable or wrong" or that "the issues presented were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citations omitted). Alternatively, when the

(continued)

U.S. DISTRICT COURT

2007 FEB 21 PM 03:05

| | Courtroom Deputy Initials: | RTS/c |
|---|---|---|

## STATEMENT

court rejects a petitioner's claims on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* at 484.

Miedzianowski first asserts that he is "unclear whether the court's denial of his motion to vacate his sentence is based on procedure or the merits of his motion or both." The court finds this contention mystifying as its order denying § 2255 relief squarely addressed the merits of Miedzianowski's motion and did not rest on procedural bar in any way.

Second, Miedzianowski takes issue with the court's statement of the law governing his ineffective assistance claims. The court relied on the well-known *Strickland* standard. *See Strickland v. Washington*, 466 U.S. 668, 687-94 (1984), which requires a showing that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. In his motion for a certificate of appealability, Miedzianowski contends that the court got the law wrong because he was seeking relief under § 2255 based not only on *Strickland* but also *Cuyler v. Sullivan*, 446 U.S. 335 (1980). According to Miedzianowski, *Cuyler* requires the court to grant relief because "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, of course, appears nowhere in Miedzianowski's underlying § 2255 filings, so any argument based on that case is forfeited. Motion at 4. Moreover, the *Cuyler* case dealt with the issue of whether multiple representation created a conflict of interest which violated the Sixth Amendment right to effective assistance of counsel. Since Miedzianowski had two lawyers representing him exclusively, *Cuyler* is inapposite.

With respect to Miedzianowski's claims that his lawyers abandoned him and provided sub-par representation that led to prejudice, the court refers the reader to its underlying order and finds that these issues do not present substantial constitutional questions. The same can be said for Miedzianowski's claim that he was entitled to an evidentiary hearing: as detailed in the court's underlying order, conclusory allegations of prejudice are not enough to receive a hearing, especially when the court has sufficient information to resolve a movant's claims based on its observations, the record, and the governing law. In sum, for the reasons discussed herein and in the court's order denying § 2255 relief, the court finds that reasonable jurists would not find the court's assessments of the constitutional issues debatable or wrong and that the issues presented by Miedzianowski are not adequate to deserve encouragement to proceed further. Accordingly, Miedzianowski's motion for a certificate of appealability is denied.

JOSEPH JEROME MIEDZIANOWSKI,   )  Civil No. 06-cv-05629-TMD
                                   )  Crim. No. 98-cr-932-1-TMD

    Movant,                )

                                     )  **Affidavit Of Joseph Jerome
v.                            )  Miedzianowski In Support Of
                                   )  His Supplemental Motion To
                                   Alter, Amend Or Vacate The
UNITED STATES OF AMERICA,    )  Court's Order Denying Relief
                                   Pursuant To 28 U.S.C. § 2255**

    Respondent.           )

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

      Comes now the Affiant, Joseph Jerome Miedzianowski, pro
se, and submits his affidavit in support of his motion brought
pursuant to Federal Rule of Civil Procedure 60(b) seeking
relief from this Court's Order and Judgment denying him relief
pursuant to 28 U.S.C. § 2255 (Civil Doc. No. 14).

      The Affiant, therefore, submits under the penalty of
perjury, 28 U.S.C. § 1746, that the following statements are
true and correct to the best of his recollection, knowledge and
belief:

      (1)  That I was the criminal defendant in the matter of the
United States v. Miedzianowski, Case No. 98-cr-932-1-BMM (NDIL
1998), which proceeded to trial and sentencing in this Court.

      (2)  That I was represented by Thomas Breen prior to and
at my trial in this case.

(3)  That prior to my trial in this Court I met with Mr.
Breen to discuss (a) the witnesses that would be called to
testify in my trial, (b) the testimony such would provide, and
(c) the necessity of presenting the testimony of each for the
purpose of corroborating my own trial testimony I was expected
to give, disproving substantive allegations made by the
Government in its Case-In-Chief, and crediting or discrediting
the testimony of other witnesses testifying at trial.

(4)  That, again prior to my trial in this Court, I wrote
numerous letters to my trial counsel emphasizing (a) the names
of the witnesses I desired to be called at my trial to testify,
(b) the testimony that each was expected to provide, and (c) the
reason for presenting such testimony -i.e., to fulfill crucial
aspects of my defense and to otherwise rebut the allegations
being made by the Government and its trial witnesses.

(5)  At the time that my trial commenced in this Court, I
proceeded to trial with the understanding that, as confirmed by
my counsel, the defense would be calling the witnesses for the
reasons addressed in our face-to-face conversations and as a
result of our written communications.

(6)  During my trial, on the final day of my testimony, I
asked my trial attorney who, and what order, he would be calling
my witnesses to the stand.

(7)  Breen, my trial attorney, answered me by saying that
my trial was lasting longer than he had anticipated and that if
he was to call the agreed upon witnesses and present the tapes
(Government recordings provided as discovery impeaching the

Government's allegations and witnesses), that my trial would last an additional two weeks.

(8) Breen then told me that, in order to do these things, that I would have to pay him an extra $100,000.00.

(9) Based upon earlier discussions, Breen was fully aware that it was highly unlikely, if not certainly impossible, for my family to make the arrangements to pay him a lump sum of an additional $100,000.00.

(10) I then told Breen that our financial agreement was for $200,000, which had already been paid in full, and that the $200,000 paid included, as agreed, full representation through trial, to include any post-trial motions should they be needed.

(11) Breen then told me that the price of $200,000 was based on his belief that my trial would last from six to eight weeks.

(12) I then told Breen that we needed to present the trial testimony of the agreed upon witnesses and the tape recordings to support my testimony and prove my innocence as outlined in our previous discussions.

(13) I further complained to Breen that he had already failed to confront the prosecution's witnesses with the tapes and evidence that we agreed upon that were essential to impeaching and discrediting witnesses.

(14) Breen told me then that it was not too late to recall these witnesses, but that to do so he would require the requisite $100,000 up front.

(15) I implored Breen to please do these things as agreed

3

because without the testimony and evidence my trial testimony would not be corroborated and the Government's allegations and the testimony of its trial witnesses would not be discredited.

(16) I told Breen that I could not afford to pay a lump sum of $100,000 but that I would speak with my family and try to make some kind of arrangement to pay him the $100,000 payment, either in payments or in a lump sum at a later date.

(17) Breen responded by telling me that he doesn't work like that, and that he would, therefore, need the $100,000 paid in full immediately.

(18) I told Breen that to have the fee paid immediately would be impossible and that, because we were in the late stages of the trial, he should ask that Court to pay his fees under the Criminal Justice Act.

(19) Breen replied that he would not ask the Court to pay his required fee because the Court would not pay him the amount he would charge -i.e., the Court would not pay him the $100,000 he was asking for.

(20) I then pleaded with Mr. Breen to reconsider his position.

(21) Breen then walked away from me and sat down.

(22) Several minutes later, Breen came back over to me and, while facing me from across the defense table, pushed a piece of paper towards me and said "read this."

(23) Consistent with his refusal to perform his promised duties without the additional payment of $100,000, the note read: "Dear Joe, your defense truck needs new tires. The gas

tank is empty. I'm going to pull it over to the side of the
road and let it rust. Abogado."

(24) I looked up at Breen and asked him "what the hell he
meant" by the note and its communication.

(25) Breen replied, "no money, no defense." He then walked
away and sat back down.

(26) Breen then rested my defense without performing any
of the the duties he promised and without presenting the tape
recordings or calling the witnesses we both agreed were crucial
to meeting the Government's case and presenting my defense.

(27) Following the finality of my underlying conviction
and sentence, I hired attorney Martin A. Blumenthal to prepare
and submit a motion to vacate, set aside, or correct setence
pursuant to 28 U.S.C. § 2255(a), alleging, inter alia, that
my Trial-Court counsel, Thomas Breen, (1) was burdened by an
actual conflict of interest based upon his placing of his
pecuniary interests above the interests of his client, and (2)
that, but for the alleged conflict of interest, Mr. Breen would
have otherwise performed differently by calling the agreed
upon witnesses necessary to rebut the Government's case, impeach
its witnesses, and otherwise support my testimony and defense.

(28) To support my claims that Mr. Breen was "adversely
affected" by the alleged conflict of interest -that being his
demand for $100,000 quid pro quo for the presentation of my
defense and the performance of other necessary duties- I offered
to Mr. Blumenthal (1) a sworn affidavit providing details that
recount the discussions I had with Mr. Breen in relation to his

5

request for the $100,000 payment and his provision of a note indicating that he would not present witnesses and evidence in the aid of my defense; (2) a copy of the note that Mr. Breen had given to me in the aforementioned regard; (3) detailed explanations of the witnesses Breen failed to call, what they would have testified to, and why their testimony was germane to the issue of guilt or innocence; and (4) detailed accounts of what the other evidence was and would ahve revealed had they been presented as part of my defense.

(29)  Blumethal responded to my offer of an affidavit (which I had prepared and sent to him) by stating that such was NOT necessary to be presented with the 28 U.S.C. § 2255 motion as the note manifesting the conflict of interest based upon Breen's pecuniary interests was "prima facie" evidence demonstrating my entitlement to relief.

(30)  I, nevertheless, specifically asked Mr. Blumenthal to include the affidavit with my 28 U.S.C. § 2255 to ensure that the note was given the proper context and interpretation —a context and interpretation that would have been substantially "colored" by my conversations with Breen and that would have provided the requisite "legal context" necessary to perfect my claim that Breen was elevating his pecuniary interests above my own interest to present a "complete defense" and otherwise subject the Government's case to meaningful adversarial testing.

(31)  Mr. Blumenthal did NOT include the affidavit in his 28 U.S.C. § 2255 motion preapred on my behalf and submitted to the Court.

(32)  Mr. Blumenthal did NOT include all of the evidence proffered by me to him in his 28 U.S.C. § 2255 motion, but did include some of the documentary evidence I had provided to him.

(33)  Mr. Blumenthal did NOT submit an erudite overview of the testimony and evidence excluded by Breen from my defense, but did plead such facts generally to the Court within the 28 U.S.C. § 2255 motion.

(34)  Blumenthal stated that his failure to do so at the initial briefing stages was not fatal to my cause as the pleadings and evidence set forth would, at a minimum, require the Court to (1) hold an evidentiary hearing and/or (2) compel Breen to submit an affidavit admitting or denying the allegations made within the 28 U.S.C. § 2255 motion.

(35)  Blumenthal explained that any affidavit that I could provide to illuminate my claims could be presented at that time.

(36)  Despite stating that my affidavit and other evidence and claims could be perfected as the proceedings progressed, Mr. Blumenthal never attempted to submit such following the Court's resolution of my claims in such a way that would render highly pertinent the particulars my affidavit would provide.

Further The Affiant Sayeth Naught.

Respectfully submited under the penalty of perjury, 28 U.S.C. § 1746, on this 23 day of August , 2016.

Joseph Jerome Miedzianowski
Reg. No. 11502-424
Federal Correctional Institution
Post Office Box 5000
Pekin, Illinois 61555-5000

7

## AFFIDAVIT OF JOSEPH J. MIEDZIANOWSKI

I hereby declare that the following facts are true.

1.) During my trial, on the final day of my testimony, I asked my trial attorney Thomas Breen whom - from the list of people whom I had asked him to contact and have testify on my behalf - he planned to call next to the stand.

2.) Breen answered me by saying that my trial was lasting longer than he had anticipated and that if he were to call the witnesses and present the evidence and tapes that I had requested, that my trial would last an additional two weeks.

3.) Breen told me that in order to do these things that I had requested he would need me to pay him an extra $100,000.

4.) I told Breen that our financial agreement was for $200,000, which I had already paid in full, and that the $200,000 included his and his co-counsel Steven Rueckert's representation through trial as well as any post trial motions if needed.

5.) Breen told me that that price of $200,000 was based upon his belief that my trial would last from six to eight weeks.

6.) I told Breen that I needed these witnesses to testify regarding the tapes and evidence that I had asked to be presented in court to support my testimony and prove my

innocence.

7.) I further told Breen that he had already failed to confront the prosecution's witnesses with the tapes and evidence that I had asked for, and needed, to impeach and discredit these witnesses.

8.) Breen told me that it was not to late to recall these witnesses and to do the things that I asked but that he would need the extra $100,000 to do so.

9.) I asked Breen to please do these things that I had asked of him because without them my testimony would not be substantiated and the prosecutions witnesses would not be rebutted.

10.) I told Breen that I would talk to my family to make some kind of arrangement for him to be paid the $100,000, either in payments or in full at a latter date.

11.) Breen told me that he doesn't work like that and that he would need the $100,000 paid in full immediately.

12.) I told Breen that to have it paid immediately would be impossible but seeing that we were so far along in my trial could he please ask the court to pay his fees.

13.) Breen replied that the court would not pay him the amount that he would charge.

Exhibit-I-9

14.) Breen then walked away from me and sat down.

15.) Several minutes latter, Breen came back over to me and while facing me from across the defense table pushed a piece of paper towards me and said, "read this".

16.) The note read, "Dear Joe, Your defense truck needs new tires. The gas tank is empty. I'm going to pull it over to the side of the road and let it rust. Abogado."

17.) I looked up and asked Breen, "What the hell [he] meant" by this note.

18.) Breen replied, "No money no defense."

19.) Breen then walked away and sat down.

I declare under penalty of perjury that the foregoing is true and correct.

Joseph Miedzianowski
#11502-424
U.S.Penitentiary
Victorvile
P.O.Box#5500
Adelanto, CA.  92301

Date: